

**SIGNED this 27 day of September, 2006.**

_____
R. Thomas Stinnett
**UNITED STATES BANKRUPTCY JUDGE**

_____


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                                                                  No. 00-14365
                                                                                        Chapter 7

MARY ANN NATION,
a/k/a Mary Vieth Skyles,

       Debtor.


FIRST AMERICAN TITLE INSURANCE CO.,

       Plaintiff,

v.                                                                                      Adv. Proc. No. 05-1201

MARY ANN NATION,

       Defendant.

## MEMORANDUM

Appearances:    Kevin L. Featherston and Warren J. Yemm, McKoon, Williams & Gold,
                       Chattanooga, Tennessee, Attorneys for First American Title Insurance,
                       Co., Plaintiff

                       Thomas E. Ray, Samples, Jennings, Ray & Clem,
                       Chattanooga, Tennessee, Attorney for Mary Ann Nation, Defendant

R. Thomas Stinnett, United States Bankruptcy Judge

The chapter 13 debtor owed Suntrust Bank a debt under a promissory note that was secured by a mortgage on the debtor's home. The debtor's chapter 13 plan provided that the real property, the debtor's home, would be sold and Suntrust would be paid from the sale proceeds. First American Title Insurance Company acted as the closing agent for the sale and also issued a title insurance policy to the buyers. Neither the title company nor the debtor paid Suntrust from the sale proceeds. Shortly after the sale, the court granted the debtor a discharge of her debts on the assumption that she had completed the chapter 13 plan. The title company subsequently paid Suntrust under the title insurance policy it had issued to the buyers. Suntrust then assigned the debtor's promissory note to the title company. The title company seeks to collect the debt under the note from the debtor, but the debt may be uncollectible on the ground that it was discharged. The title company brought this action to deal with the discharge question. The title company's complaint requests either of two remedies: (1) declare that the debtor's debt under the promissory note was not discharged and can still be collected by the title company, or (2) vacate the discharge so that the title company can collect from the debtor. This memorandum deals with competing motions for summary judgment filed by the title company and the debtor. The title company's motion for summary judgment addresses only the issue of whether the debt to Suntrust was discharged. The debtor's motion for summary judgment addresses both issues, whether the debt was discharged and whether the discharge should be vacated. The parties agree that there is no genuine issue of material fact regarding the issue of whether the debt to Suntrust was discharged. The court will deal with that issue first.

The court can grant summary judgment to the moving party only if there is no genuine issue of material fact, and based on the undisputed facts, the law entitles the moving party to judgment in its favor. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c).

The following facts are not disputed by the parties, or the court takes judicial notice because they are indisputably established by the record in the debtor's bankruptcy case. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201; *see, e.g.*, *Rickel & Assoc., Inc. v. Smith (In re Rickel & Assoc.,*

*Inc.)*, 272 B.R. 74 (Bankr. S. D. N. Y. 2002); *Northwestern Institute of Psychiatry, Inc. v. Travelers Indemn. Co. (In re Northwestern Institute of Psychiatry, Inc.)*, 268 B.R. 79 (Bankr. E. D. Pa. 2001); *In re Blum*, 255 B.R. 9 (Bankr. S. D. Ohio 2000); *Smith v. Weissfisch (In re Muzquiz)*, 122 B.R. 56 (Bankr. S. D. Tex. 1990).

The debtor filed her chapter 13 case in August 2000. The schedule of real property listed the debtor's home as worth $130,000 but subject to a secured claim of $26,784.83. The schedule of secured debts also valued the property at $130,000 and identified the secured creditor as Suntrust Bank. The schedule of exempt property asserted a homestead exemption in the property.

The proposed chapter 13 plan valued the real property at $26,784.83 and provided that Suntrust would be paid $240 per month. This was followed by an explanation: "This is a maintenance payment with a balloon payment due at the end of the plan." The proposed plan provided separately that an arrearage to Suntrust, totaling about $2,600, would be paid in full at $100 per month. The proposed plan did not expressly provide for payment of interest on the arrearage.

Suntrust objected to confirmation of the proposed plan on several grounds: (1) lack of adequate protection; (2) insufficient regular income; (3) failure to provide for full payment of real property taxes for the year 2000 when due. 11 U.S.C. § 361 & § 1325(a)(6).[1] When Suntrust's objection to confirmation came up for hearing, the debtor's lawyer and Suntrust's lawyer were both present. One or both of them announced that Suntrust's objection had been resolved. The objection was resolved by a change in the plan to provide for payment of interest on Suntrust's arrearage claim.

With that change in the plan, the court confirmed it on October 27, 2000. The plan required the debtor to pay $500 per month to the chapter 13 trustee. The plan provided for full

---

[1] The objection form includes an entry that allows the objecting party to specify other grounds later, but Suntrust did not do so.

payment of unsecured claims but did not specifically state the number of months required to complete the plan. The confirmation order approved continuation of the plan up to 60 months if needed.

Suntrust filed a proof of claim for an arrearage of $1,474.35 and a proof of claim for the principal amount of $24,264.99 plus an attorney's fee of $95. A copy of the debtor's promissory note to Suntrust was attached to each proof of claim. The promissory note called for 60 payments – 59 monthly payments of $240 each beginning in May 1997, followed by a balloon payment of $23,264.99 due in April 2002.

In December 2002 the debtor filed a modified plan. The modified plan did not provide for paying an arrearage to Suntrust. The modified plan also reduced the debtor's monthly payments to the trustee by $100, which was the amount of the monthly principal payment on the arrearage claim. Apparently the arrearage claim had already been paid in full with interest.

As to Suntrust's principal claim, the modified plan provided that the real property securing the debt would be sold before October 1, 2003, the $240 monthly payments would be continued, and the full balance of the debt would be paid from the sale proceeds. The court confirmed the modified plan on January 10, 2003, and five days later approved the employment of a realtor to sell the property. The realtor's agreement provided for a 7% commission.

The debtor sold the property for $160,000. According to the title company, the chapter 13 trustee informed it that he needed about $7,000 to complete the chapter 13 plan, and the title company paid the stated amount to the trustee. This amount is listed on the closing statement as "Payoff of first mortgage loan - C. Kenneth Still, Trustee."

The title company provided title insurance to the buyers. The closing statement reveals the following payments to the title company from the sale proceeds:

| | |
|---|---|
| Title insurance premium | $790 |
| One-half closing fee | 125 |
| Document fee | 55 |

        Shipping/handling or administrative service fee    20

The largest payments from the sale proceeds were the money paid to the chapter 13 trustee ($6,925.22), the commission paid to the real estate agent ($11,200), and taxes ($7,741.82). After deducting all these amounts, the title company paid the debtor $133,142.96 as the net proceeds of the sale. Neither the title company nor the debtor paid the secured debt to Suntrust from the sale proceeds.

      After the chapter 13 trustee received his share of the sale proceeds and distributed the money to creditors and the debtor, he filed a certificate of final payment in the debtor's chapter 13 case. It certified that the debtor had completed all payments under the plan and was entitled to a discharge under § 1328(a) of the bankruptcy code. 11 U.S.C. § 1328(a). The court entered a discharge on the day the certificate was filed, February 4, 2003.

      The chapter 13 trustee filed his final report and account in early July 2003. The final report reveals the following payments:

    Secured claims

        Suntrust                    $1,474.35
                                        102.10 (interest)
        Suntrust                    $7,200.00

    Priority claims

        Hamilton County      $2,017.39
                                          1,648.93 (interest)

    Unsecured claims

        SMC (Proffitt's )      $  333.31
        Risk Mgmt.            $2,252.49
        BellSouth              $  373.56

    Attorney's Fee                 $  850.00

    Trustee's Expense         $  312.00

    Refund to debtor            $4,630.00

The court closed the case (entered a final decree) on August 14, 2003.

In October 2004 Suntrust assigned the debtor's promissory note to the title company after the title company paid the debt to Suntrust under the title insurance policy issued to the buyers. In February 2005 the title company sued the debtor in state court to collect the promissory note. The debtor raised the discharge in bankruptcy as a defense to the complaint.

On August 15, 2005, the title company filed a motion to reopen the chapter 13 case. The court reopened the case in late September 2005, and the title company filed the complaint commencing this adversary proceeding. The debtor filed an answer with a counter-complaint. The answer asserts that the title company was the debtor's agent for the purpose of conducting the closing, the title company was responsible to the debtor as her agent for receiving and disbursing the sale proceeds, and the title company's loss was caused by its own negligence in handling the closing and disbursement of the sale proceeds.

## DISCUSSION

The court granted the debtor a discharge of her debts on the basis that she had completed her chapter 13 plan. The discharge applies to all debts "provided for by the plan" with some exceptions. 11 U.S.C. § 1328(a).[2] The title company's complaint alleges that the debt to Suntrust was not discharged because it was not provided for by the plan. In the alternative, the title company argues that the debt came within the exception from discharge for a debt treated by the plan as a long-term debt. 11 U.S.C. §§ 1328(a)(1) & 1322(b)(5); 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 351.1 (3rd ed. 2006). The debtor takes the opposite view on both points. She contends the debt was discharged because it was provided for by the plan, and the plan did not provide for it as a long-term debt.

---

[2] Unless otherwise noted, all citations to the bankruptcy statutes (title 11) are to the statutes as they were before the numerous amendments that were made in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act. Those amendments generally apply to cases filed on or after October 17, 2005. Pub. L. No. 109-8, § 1501, 119 Stat. 23, 216 (2005).

When the court refers to the original plan or the modified plan, it means the plans as confirmed. The first question is whether the modified plan provided for Suntrust's debt. The title company's argument, however, also relies on the original plan. There is merit to this approach because the plans are similar. The original plan provided for continuing the $240 monthly payments to Suntrust and paying the balance of the debt in a balloon payment at the end of the plan; it did not explain how the debtor would make the balloon payment. The modified plan provided for continuing the $240 monthly payments *and* set out a method for making the balloon payment. The title company argues that the original plan did not provide for full payment of the debt to Suntrust because the balloon payment was to be made at the end of the plan, and the modified plan should be interpreted the same way.

The argument on the meaning of payment "at the end of the plan" seems to involve a series of interpretations: (1) payment at the end of the plan meant the final payment would be made *after* the debtor completed the plan; (2) payment after the debtor completed the plan would not be payment under the plan; (3) since the final payment would not be under the plan, then the plan did not provide for full payment of the debt. The court does not agree with the beginning step of this argument. Payment at the end of the plan appears to mean the payment was supposed to be the last payment or nearly the last payment under the plan. This makes more sense than interpreting "at the end of the plan" to mean a payment after completion of the plan.

The title's company argument on this point also relies on the original plan's description of the monthly payment as a maintenance payment. The lack of detail in the original plan creates some leeway for this argument. The original plan did not set out the source of the balloon payment at the end of the plan. This suggests a different interpretation of the plan: the monthly plan payments to Suntrust would hold it off until the debtor completed the plan by paying all the other debts, including Suntrust's arrearage, and then, after completion of the plan, the debtor would deal with the problem of making the balloon payment to Suntrust. The court thinks this interpretation is not consistent with the wording of the plan, but in any event, the modified plan

requires rejection of the argument.

The modified plan provided that the property would be sold before a certain date and the proceeds used to make the balloon payment to Suntrust. The sale and the use of the proceeds to pay Suntrust were authorized by confirmation of the modified plan. The sale and the payment of Suntrust from the proceeds were required by the modified plan; they were steps in performance. The balloon payment was obviously provided for by the modified plan. *Rake v. Wade*, 508 U.S.C 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993); *see generally* 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 349.1 (3rd ed. 2006).

The use of "maintenance payment" to describe the monthly plan payments to Suntrust does not call for a different result. Chapter 13 lawyers and chapter 13 plans regularly refer to a monthly payment as a maintenance payment when the plan treats the debt as a long-term debt. In that situation, completion of the plan is not intended to result in discharge or full payment of the debt. 11 U.S.C. §§ 1322(b)(5) & 1328(a)(1); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 129.1 (3rd ed. 2006). On the other hand, "maintenance payment" is loosely used to describe plan payments in other situations. It does not necessarily mean the chapter 13 plan treats the debt as a long-term debt. Indeed, the court will subsequently explain how the modified plan did not deal with the mortgage as a long term debt.

The title company makes another argument against treating the balloon payment as part of the modified plan. The argument focuses on the role and the actions of the chapter 13 trustee. The argument boils down to two points: (1) the principal debt to Suntrust was not provided for by the modified plan because it did not require the chapter 13 trustee to receive the sale proceeds and make the balloon payment to Suntrust; (2) the actions of the trustee reveal his opinion that the balloon payment to Suntrust was not part of the modified plan.

The payoff amount that the trustee furnished the title company, the trustee's certificate of final payment, and the trustee's final report all support the conclusion that the trustee did not treat the modified plan as requiring him to receive and distribute the sale proceeds to

Suntrust. In other words, the trustee treated the payments under the plan as complete even though he did not receive the sale proceeds and make the balloon payment to Suntrust. According to the title company, this means the trustee viewed the plan as complete without regard to whether Suntrust had received the balloon payment.

The court disagrees. When a chapter 13 plan provides for the sale of real property that is subject to a mortgage, the trustee will not necessarily expect to receive and distribute the sale proceeds to the creditor whose debt is secured by the mortgage. The statutes do not require it. 11 U.S.C. §§ 1302(b) & 704(1); *see also* U.S.C. §§ 1303, 1306(b), 1325(c) & 1326. The court can confirm a plan that provides for the debtor to make some plan payments directly to a creditor. 11 U.S.C. § 1326(c); *In re Wittenmeier*, 4 B.R. 86 (Bankr. M. D. Tenn. 1980); 1 Keith M. Lundin, *Chapter 13 Bankruptcy* § 59.1 (3rd ed. 2006); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 103.2 (3rd ed. 2006).  As to a debt secured by real property, the court can confirm a plan that provides for a sale of the property and payment of the secured debt from the proceeds. 11 U.S.C. §§ 1303, 363 & 1322(b)(8); *In re Erickson*, 176 B.R. 753 (Bankr. E. D. Pa. 1995); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 102.1 (3rd ed. 2006). The court can confirm such a plan even if it allows the debtor or the debtor's agent to make the sale, receive the proceeds, and pay the creditors whose claims are secured by the property. *See In re Bettger*, 105 B.R. 607 (Bankr. D. Ore. 1999); *In re Smith*, 51 B.R. 273 (Bankr. D. D. C. 1984); *In re Roberts*, 226 B.R. 240 (Bankr. D. Idaho 1998) (debtor's attorney); *Ritts v. Griggsby*, 308 B.R. 231 (D. Md. 2004) (closing agent). In summary, the chapter 13 trustee can rely on the debtor personally or with the help of agents to complete a property sale as provided for by the plan and to use the proceeds to pay the secured creditors as provided in the plan. The trustee may not object to a plan that provides for a reliable closing agent to receive and distribute the proceeds to the secured creditors as provided in the plan. Indeed, the trustee is likely to be satisfied with a reliable closing agent and to assume the closing process will result in payment of the debts secured by mortgages on the property *as provided in the plan*. The court is aware from

long involvement with chapter 13 cases that this course of action is not unusual.[3]

Again, the lack of detail in the plan allows the title company's argument to have some merit. The modified plan did not specify who would receive the sale proceeds and pay Suntrust. The question is whether the trustee should have taken this to mean that he should receive and distribute the proceeds to the secured creditors. The plan could have expressly imposed those duties on the trustee, but it did not. Furthermore, the law does not require it, and the chapter 13 trustee has in the past relied on debtors and their closing agents to receive and distribute sale proceeds to secured creditors in accordance with the chapter 13 plan. For these reasons, the court concludes that the trustee was justified in deciding that the plan did not require him to receive the proceeds from the sale of the debtor's real property and use them to pay the debt to Suntrust that was secured by the property.

This explains why the trustee's office did not include the balloon payment in the pay-off amount furnished to the title company. Since the trustee did not intend to receive the money and pay it to Suntrust, then the trustee did not need the money to complete the plan by making the balloon payment. The process of closing the sale should have resulted in payment of the debt to Suntrust, but the title company apparently misunderstood the obvious meaning of the modified plan – that Suntrust was to be paid about $27,000 from the sale proceeds in addition to the monthly maintenance payments that were made through the chapter 13 trustee. When the trustee certified that the debtor had completed the plan, the certification did not depend on an assumption by the trustee that the balloon payment to Suntrust was not part of the plan. The trustee only had to make a narrower assumption – that the direct payment to Suntrust had been made or would be made as required by the plan. Thus, the trustee's actions do not support the title company's argument that the trustee treated the balloon payment as not necessary to complete the modified plan. The

---

[3] 28 U.S.C. § 586(e)(2) requires payment of the chapter 13 trustee's percentage fee or commission only from property received by the trustee. *Michel v. Beard (In re Beard)*, 45 F.3d 113 (6th Cir. 1995) (chapter 12 trustee); 1 Keith M. Lundin, *Chapter 13 Bankruptcy* §§ 59.1 & 64.4 (3rd ed. 2006).

modified plan provided for the balloon payment to Suntrust even though the plan did not set out in detail the method for receiving the sale proceeds and distributing the correct amount to Suntrust.

Next, the title company argues that the plan treated the debt as a long-term debt. A debt can qualify as a long-term debt if the last payment is due after the final plan payment. The statutes set out one method for a plan to treat a debt as a long-term debt. The plan must provide for curing defaults and continuing the regular payments. 11 U.S.C. § 1322(b)(5); *In re Ford*, 221 B.R. 749 (Bankr. W. D. Tenn. 1998); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 171.1 (3rd ed. 2006). The point is to keep up the regular payments during the plan and then continue making the regular payments that come due after completion of the plan; discharge of the debt is not the intent of the plan. The discharge statute excepts from discharge a debt that the plan dealt with as a long-term debt. 11 U.S.C. § 1328(a)(1).

The modified plan shows the value of the real property as the amount of Suntrust's scheduled claim, about $27,000. The real property was obviously worth more; the debtor scheduled it at $130,000 and sold it for $160,000. The modified plan also did not set an interest rate. The modified plan provided for payment of the regular monthly payments of $240 during the plan and payment of the balloon payment after completion of the plan. The title company argues that this amounted to treatment of the mortgage debt as a long-term debt. The court disagrees.

First, the debt to Suntrust did not qualify as a long-term. The court confirmed the original plan in October 2000. The promissory note called for the final, balloon payment to Suntrust in April 2002. The court has compared the amount of the debtor's monthly plan payments to the amounts that were actually required to complete the plan, as shown by the trustee's final report.[4] The comparison reveals that the debtor's original plan would have run past the due date of the balloon payment in April 2002. Furthermore, the due date of the balloon payment had already passed when the court confirmed the modified plan. The debt did not qualify as a long-term debt

---

[4] The court is not counting the refund to the debtor in the calculation of the time needed to complete the payments to the trustee.

for purposes of the original plan or the modified plan because the last payment on the promissory note was due before the final payment under the plan. 11 U.S.C. § 1322(b)(5); *Citizens Trust & Savings Bank v. Schafer (In re Schafer)*, 99 B.R. 352 (W. D. Mich. 1989).

Second, the plan did not provide for payment of the mortgage debt in the manner required for a long-term debt. To comply with the statute, the plan should have provided for curing defaults, making the monthly payments on the promissory note, and paying the balloon payment when it came due in April 2002. 11 U.S.C. § 1322(b)(5); *Tavella v. Golden National Mortg. Co. (In re Tavella)*, 191 B.R. 637 (Bankr. E. D. Pa. 1996); *In re Hanson*, 310 B.R. 131 (Bankr. W. D. Wis. 2004). Neither the original plan nor the modified plan followed this pattern. Both plans postponed the balloon payment until after the due date set by the promissory note. Both plans provided for continuing the $240 monthly payments until the balloon payment was made, and that required continuing the monthly payments longer than the promissory note allowed. In summary, the modified plan did not follow the requirements of § 1322(b)(5) for treating the mortgage debt as long-term debt. As a result, the debt to Suntrust was not excepted from discharge as a long-term debt that the plan dealt with as long-term debt.

This conclusion brings up the question of how the plan dealt with Suntrust's claim. When a chapter 13 debtor desires to keep the collateral securing a debt, the plan will usually provide for the debt as required by § 1325(a)(5)(B). 11 U.S.C. § 1325(a)(5)(B).  To satisfy § 1325(a)(5)(B), the plan must provide for payment to the creditor of the "present value" of its "allowed secured claim." 11 U.S.C. § 1325(a)(5)(B) & § 506(a). The amount of the allowed secured claim is determined by the value of the collateral. 11 U.S.C. § 506(a), (b); *In re Young*, 199 B.R. 643 (Bankr. E. D. Tenn. 1996). The allowed secured claim is the value of the collateral or the amount of the debt secured by the collateral, *whichever is less*. The present value standard requires the plan to provide for payment of interest on the allowed secured claim. *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004); *Household Automotive Finance v. Burden (In re Kidd)*, 315 F.3d 671 (6th Cir. 2003); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 111.1 (3rd ed. 2006).  In

summary, the court can confirm a plan as to a particular secured debt if the plan provides that the creditor will be paid its allowed secured claim plus interest.

If the value of the collateral is less than the amount of the secured debt, the plan can be confirmed if it provides for payment to the creditor of the value of the collateral plus interest.[5] This is commonly referred to as cram-down. When the debtor completes a cram-down plan, the collateral is freed from the creditor's lien even though the debtor did not pay the secured debt in full according to the contract with the secured creditor. 11 U.S.C. § 1328(a) & § 524; *In re McPherson*, 230 B.R. 99 (Bankr. E. D. Ky. 1999) (release of lien between plan completion & discharge); *In re Smith*, 287 B.R. 882 (Bankr. W. D. Tex. 2002) (release denied until completion of plan).[6] Of course, the result of completing the plan is the same when the plan dealt with the secured claim under § 1325(a)(5)(B), but the value of the collateral prevented cram-down. In that situation, there was still an allowed secured claim to be paid under the plan with interest.

The debtor will often lack the financial ability to carry out a plan that applies § 1325(a)(5)(B) to a debt secured by the debtor's home. 11 U.S.C. § 1322(b)(2), (d); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 128.2 at 128-15–128-16 (3rd ed. 2006). Furthermore, the law protects most home mortgages from being dealt with under § 1325(a)(5)(B). This prohibition on using § 1325(a)(5)(B) allows a chapter 13 plan to treat the home mortgage as a long-term debt, if it is a long-term debt. 11 U.S.C. § 1322(b)(2), (5). In that situation, the debtor will *not* obtain a release of the mortgage by paying the present value of the allowed secured claim during the plan, and the discharge granted to the debtor after completion of the plan will not discharge the mortgage debt. 11 U.S.C. §§ 1328(a) & 1322(b)(5).

---

[5] Section 506 actually requires valuation of the secured claim, the secured creditor's interest in the bankruptcy estate's interest in the property. For example, the value of the secured claim can be reduced by other higher-priority liens on the same collateral. *Taffi v. United States (In re Taffi)*, 96 F.3d 1190 (9th Cir. 1996); *Lane v. Western Interstate Bancorp. (In re Lane)*, 280 F.3d 663 (6th Cir. 2002).

[6] The 2005 amendments added a provision to continue the secured creditor's lien until the debt (not the allowed secured claim) is paid in full or the discharge entered. 11 U.S.C. § 1325(a)(5)(B)(i)(I).

There are exceptions to the prohibition on dealing with a home mortgage under § 1325(a)(5)(B). The short-term debt exception applies when the last regular payment on the mortgage debt will come due before the last payment under the chapter 13 plan. The plan can deal with the short-term home mortgage under § 1325(a)(5)(B), which may be financially easier for the debtor. 11 U.S.C. § 1322(b)(2), (c)(2). The court has already pointed out that the mortgage debt to Suntrust did not qualify as a long-term debt under § 1322(b)(5). The mortgage debt also came under the short-term debt exception. The last regular mortgage payment – the balloon payment – would have come due before the final payment under the original plan or the modified plan. As a result, the modified plan could have provided for the mortgage debt to Suntrust under § 1325(a)(5)(B). *In re Sexton*, 230 B.R. 346 (Bankr. E. D. Tenn. 1999).

The modified plan treated Suntrust's allowed secured claim as the full amount of the debt because the value of the collateral was more than the debt. 11 U.S.C. § 506(a). The plan form can be confusing on this point. It calls for the value of the collateral, but the purpose is to establish the amount of the allowed secured claim. That is why the plan did not state the scheduled value of the real property ($130,000) in the "Value" column. It stated the full amount of the debt because that was the amount of Suntrust's allowed secured claim. Thus, the plan provided for full payment of the allowed secured claim. It provided for payment of interest on the allowed secured claim by continuing the monthly installment payments beyond the term set in the promissory note and up to payment of the balloon payment. In this regard, § 1325(a)(5)(B) did not require equal installment payments to amortize the allowed secured claim plus interest. It only required total payments that would equal the present value of the allowed secured claim. That could be accomplished by paying interest in monthly installments and then making a balloon payment of the allowed secured claim. In summary, the modified plan dealt with the mortgage debt under § 1325(a)(5)(B) as a fully secured debt. 11 U.S.C. § 1325(a)(5)(B); *see Rake v. Wade*, 508 U.S.C 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993); *Key Bank v. Milham (In re Milham)*, 141 F.3d 420 (2d Cir. 1998); *Ford Motor*

*Credit v. Carpenter (In re Carpenter)*, 223 B.R. 114 (Bankr. S. D. Ohio 1998).[7]

If this interpretation is not correct, would the result be the same? The court may confirm a plan even though its treatment of a particular secured debt does not exactly follow any of the statutory methods for dealing with a secured debt. That can occur when the secured creditor accepts the plan. 11 U.S.C. 1325(a)(5)(A).[8] It can also occur when the secured creditor does not expressly accept the plan but fails to object to confirmation. If the court confirms the plan, it will be binding on the secured creditor even though its treatment of the creditor's claim does not exactly fit within the statutory methods for dealing with the secured debt. *In re Grammar*, 310 B.R. 423 (Bankr. E. D. Ark. 2004); *In re Vincent*, 252 B.R. 91 (Bankr. E. D. Va. 2000); *Immordino v. Risser (In re Risser)*, 22 B.R. 868 (Bankr. S. D.Cal. 1982).[9] This state of the law allows the title company to propose various interpretations of the plan that do not fit either § 1325(a)(5)(B) or the long-term debt provision. The point of these possible interpretations must be that the balloon payment was not to be a payment under the plan. That point cannot be attained. The balloon payment was required by and was a step in performance of the modified plan even though the modified plan did not require the chapter 13 trustee to make the balloon payment. The modified plan provided for completion of all payments to Suntrust on the mortgage debt; the secured claim was fully provided for under the plan so that completion of the plan would result in release of the mortgage and

---

[7] Confirmation should be res judicata as to whether the modified plan's treatment of the debt satisfied the requirements of § 1325(a)(5)(B). *In re Young*, 281 B.R. 74 (Bankr. S. D. Ala. 2001); 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 229.1 at 229-14–229-16 (3rd ed. 2006).

[8] The law does not establish a method for a secured creditor to formally accept a plan. 11 U.S.C. § 1325(a)(5)(A); Fed. R. Bankr. P. 3015 & 3018. Failure to object may amount to acceptance of the plan, or at the least imply acceptance of the plan. *In re Szostek*, 886 F.2d 1405 (3d cir. 1989); *Andrews v. Loheit (In re Loheit)*, 49 F.3d 1404 (9th Cir. 1995); *In re James*, 260 B.R. 498 (Bankr. D. Idaho 2001).

[9] There are limits on this rule with regard to plan provisions that depart too much from bankruptcy law and procedure. Pre-confirmation notice and the opportunity to object cannot overcome the surprise to the affected creditor. *Ruehle v. Educational Credit Management Corp. v. Ruehle (In re Ruehle)*, 412 F.3d 679 (6th Cir. 2005); *Deutchman v. Internal Revenue (In re Deutchman)*, 192 F.3d 457 (4th Cir. 1999).

discharge of the debt.

In this regard, the *Huyck* case does not hold that a debt is not provided for by a plan (and will not be discharged) if the plan provides for direct payment by the debtor. The court may confirm a plan that prevents discharge of a debt that would otherwise be discharged if the debtor completes the plan. *See In re Ford*, 221 B.R. 749 (Bankr. W. D. Tenn. 1998); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 157.1 (3rd ed. 2006) (on classification). As a result, the question of whether a debt was discharged can involve the question of whether the debt was provided for by the plan *and* the question of whether the plan was intended to prevent discharge of the debt. The court in *Huyck* interpreted the plan as reflecting the debtor's intent to prevent discharge of the debt. *Mayflower Capital Co. V. Huyck (In re Huyck)*, 252 B.R. 509 (Bankr. D. Colo. 2000). The court did not hold that a plan automatically does not provide for a debt if the plan allows direct payment by the debtor. The debtor's modified plan provided for the balloon payment even though it was to be paid directly by the debtor or her agent.

In summary, the modified plan provided for the mortgage debt to Suntrust under § 1325(a)(5)(B), instead of treating it as a long-term debt under § 1322(b)(5), *or* even if the modified plan's treatment of the debt did not exactly fit any of the statutory methods for dealing with a secured debt, the plan still provided for all the payments on the debt, including the balloon payment, as part of the plan. The plan was intended to result in release of the mortgage and discharge of the debt to Suntrust after completion of the plan payments, which included the balloon payment.

The problem in this case arises because the court granted the debtor a discharge as if she had completed the plan even though the debt to Suntrust was not paid as required by the plan. The question becomes whether failure to pay the debt as provided in the plan prevented its discharge.

The title company might argue that the plan was not intended to discharge the debt if the debtor did not make the balloon payment from the sale proceeds. This is true in the sense that the plan was intended to discharge the debt after all the plan payments were made, including the

balloon payment. It does not mean the unpaid amount is or should be excepted from discharge. The title company's argument is that when the court enters a discharge on the basis that the debtor has completed the plan, but the debtor has not actually completed the plan because a mistake resulted in failure to complete payments on a particular debt, then the unpaid amount is not discharged.

The discharge statute does not create any such exception from discharge. 11 U.S.C. § 1328(a). The court should not create any such exception because it would seriously undercut the effect and benefit of the discharge after completing a plan. A basic reason for undertaking and completing a chapter 13 plan is to obtain a bankruptcy discharge of the debts provided for by the plan. This is true even for debts that are extinguished under non-bankruptcy law because the plan resulted in full payment. The plan should not be interpreted as excepting the debt from discharge simply because Suntrust failed to receive all the plan payments. There are other remedies under the rules and the statutes to deal with this kind of problem.

The courts have created exceptions from discharge based on inadequate or ineffective notice to the creditor, but this case does not come within those exceptions.[10]  A variety of other mistakes and errors during the bankruptcy process can result in failure to pay a debt as provided in the plan and entry of the discharge as if the plan had been completed. With regard to those errors and mistakes, the discharge is effective unless and until it is vacated. 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 349.1 at 349-12–349-20 (3rd ed. 2006). This case fits into that broader category. The discharge applies to the debt to Suntrust and prevents the title company from enforcing the promissory note against the debtor *unless* the discharge can be vacated.  On the question of whether the debt to Suntrust was discharged, the court will deny the title company's

---

[10] The *Ruehle* and *Deutchman* cases, cited in note 9, seem to involve notice that was ineffective because the plan provision attempted too great a shortcut in procedure or too great a departure from the expected and allowable effects of a plan.

motion for summary judgment and grant the debtor's motion.[11]

This leaves the question of whether the discharge can be set aside. The title company has not asked for summary judgment on that issue, but the debtor has. The debtor argues that the discharge cannot be set aside because the title company filed its complaint after the deadline set by Rule 60 for asking the court to set aside the discharge.

Since the title company is not seeking to revoke the discharge under § 1328(e), the court is not concerned with the one-year deadline for such complaints. 11 U.S.C. § 1328(e). The title company relies on Rule 60(b) of the civil procedure rules. Bankruptcy Rule 9024 incorporates Rule 60 with some changes. This court has previously decided that a discharge may be vacated under Rule 60(b). *In re Hartman*, Bankr. No. 00-2172 (Bankr. E. D. Tenn. Apr. 8, 2002); *see also Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462 (9th Cir. 1993); *In re Mann*, 197 B.R. 634 (Bankr. W. D. Tenn. 1996).

Rule 60(b) includes a variety of grounds for vacating a final order. The title company's complaint does not rely on any particular provision of Rule 60(b).[12] The briefs filed by the title company appear to rely exclusively on Rule 60(b)(1), which allows relief from an order on the basis of mistake, inadvertence, surprise, or excusable neglect. Fed. R. Bankr. P. 9024; Fed. R. Civ. P. 60(b)(1).

A request for relief under Rule 60(b)(1) must be filed within one year after the order was entered. The title company filed its complaint in September 2005, more than two years after

---

[11] This result suggests an argument that the title company was not required to pay Suntrust to obtain a release of the mortgage because it no longer secured any debt to Suntrust. The debtor's brief, however, avoids this question. It assumes that the discharge released the debtor from personal liability but did not release or nullify Suntrust's interest in the property. *In re Vankell*, 311 B.R. 205 (Bankr. E. D. Tenn. 2004).

[12] A complaint is a valid method of requesting relief under Rule 60(b). *Childress v. Aurora National Bank (In re Childress)*, 851 F.2d 926 (7th Cir. 1988). A complaint was appropriate in this case to raise the question of whether the debt was discharged, and the request for relief under Rule 60 was properly joined. Fed. R. Bankr. P. 4007(e), 7001(6) & 7018; Fed. R. Civ. P. 18(a).

entry of the discharge in February 2003. The title company argues that the court has the power under § 105(a) of the bankruptcy code to grant relief from the deadline or to grant relief under Rule 60(b)(1) despite the failure to request relief before the one-year deadline.

Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). The procedural rules deny the court the equitable power to extend the one-year limit in Rule 60(b). Fed. R. Bankr. P. 9024 & 9006(b); Fed. R. Civ. P. 60(b) & 6(b); *Smith v. Secretary of Health and Human Services*, 776 F.2d 1330 (6th Cir. 1985); 11 Charles A. Wright, et al., *Federal Practice and Procedure* § 2866 at 390–392. Section 105(a) apparently does not give the court any additional power to override the time limit. *Clay County Bank v. Culton (In re Culton)*, 161 B.R. 76 (Bankr. M. D. Fla. 1993).

The Sixth Circuit's decision in *Maughan* suggests that the court may have the power under § 105(a) to ignore the one-year limit on equitable grounds and permit a late-filed motion under Rule 60(b)(1). *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337 (6th Cir. 2003). The case did not involve a motion under Rule 60(b)(1). It involved a creditor's late-filed complaint against the debtor to except a debt from discharge. 11 U.S.C. § 523(c); Fed. R. Bankr. P. 4007(c). Rule 4007(c) allowed the bankruptcy court to extend the complaint deadline only if a motion to extend was filed before the deadline, but the creditor had not filed such a motion. Rule 9006(b) also prohibited the court from extending the time on the basis of the creditor's excusable neglect. The Sixth Circuit reasoned that the deadline was equitably tolled because the debtor caused the creditor to be late in filing the complaint. The result was the same as granting an extension of the deadline after it had passed and even though the creditor had not filed a timely motion to extend the deadline.

The rules of procedure are similar with regard to a motion under Rule 60(b)(1). Rule 9006(b) does not allow an extension of the one-year limit on the ground of excusable neglect. Rule 60(b) differs from Rule 4007(c), however, in a major respect. Rule 4007(c) allows the complaint deadline to be extended if a motion to extend is filed before the deadline. Rule 60(b), however, does not allow any extension of the deadline. Rule 60(b) also does not impose the one-year deadline on all the grounds for relief from a final order. In particular, Rule 60(b)(6) allows relief for any other reason justifying relief. This ground is not subject to the one-year limit, but it is restricted to "extraordinary circumstances." 11 Charles A. Wright, et al., *Federal Practice and Procedure* § 2864. Rule 60(b) also recognizes the existence of a separate equitable action for relief from a final order. Such an action requires proof of more than mistake, inadvertence or excusable neglect. 11 Charles A. Wright, et al., *Federal Practice and Procedure* § 2867. The grounds for relief under Rule 60(b)(6) or in an independent action for relief should be sufficient to encompass the theory of equitable tolling that the Sixth Circuit applied in *Maughan*. These facets of Rule 60(b) and the rule that excusable neglect is not a ground for obtaining more time to file a motion under Rule 60(b)(1) suggest that there are no equitable grounds for allowing a late motion under Rule 60(b)(1).

The Sixth Circuit also has not overruled or distinguished the *Smith* decision, and it seems to deny the court any discretion to allow a late motion under Rule 60(b)(1)  *Smith v. Secretary of Health and Human Services*, 776 F.2d 1330 (6th Cir. 1985). The court has not found decisions from other courts that apply equitable tolling to the one-year period for filing a motion under Rule 60(b)(1). For these reasons, the court agrees with the debtor's argument that the complaint under Rule 60(b) must be dismissed because it was filed after the one-year deadline. The title company has not attempted to bring the complaint under Rule 60(b)(6) or to characterize it as an independent action for relief from the discharge, neither of which is subject to the one-year limit. The court will enter summary judgment for the debtor denying the relief requested by the title company and dismissing the complaint.